No. 29,217.

The State of Kansas, *Appellee*, v. Roy V. Stuart, *Appellant*.

(283 Pac. 630.)

Opinion filed January 11, 1930.

W. C. *Gould*, of Dodge City, for the appellant.

*William A. Smith*, attorney-general, *R. O. Mason*, assistant attorney-general, and *E. C. Minner*, county attorney, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: Roy V. Stuart was charged and convicted on a count alleging the possession of intoxicating liquor, and he appeals.

The questions raised on his appeal are misconduct of the jury, an instruction alleged to be erroneous, and also that the testimony was insufficient to support the verdict. It appears that liquor was found in an elevator which the defendant was operating. It was found in a basement having a dirt floor under what is designated as the workroom. The sheriff went to the elevator and searched the workroom, where the defendant and three other persons were found talking together. Some of the party had been drinking, but no liquor was found there. The sheriff then went into the basement and there found at the foot of the stairs a gallon jug partly filled with whisky. About the time that the officers arrived at the elevator a man named John Clark was seen there for a few minutes and then he left the building. The theory of the defense was that this man Clark placed the whisky in the basement shortly before the

sheriff arrived. Several men were employed at the elevator and it appears that a helper by the name of Steel testified that he saw Clark carry the jug into the basement, but that he had not had time to inform Stuart, the defendant, of the occurrence.

As to the misconduct of the jury, Mr. Gearhart, one of the jurors, testified upon the motion for a new trial that as soon as the jury retired he asked his fellow jurors if in considering the case it would be all right to state his personal knowledge of the witnesses. Another juryman told him that it would be all right to do so. He then told the jury that he was personally acquainted with the witnesses Ricker and Steel, who had testified on behalf of defendant, that they were heavy drinkers and it was just a case of one of the bunch trying to protect another; that they were trying to help out Stuart, the defendant. Several of the jury testified on the motion for a new trial of having heard Gearhart ask other jurors if it would be all right to use his personal knowledge in the consideration of the case, and were told it would be all right. He stated that he had known Ricker, one of the witnesses, for some time, and knew him to be a boozer. Other jurors testified that Gearhart told them he had known the witnesses for years, and knew them to be heavy drinkers, and that this was a case in which they were trying to help out a friend. These remarks, it appears, were repeatedly made during the deliberations of the jury. Ricker and Steel were witnesses who testified in behalf of defendant and the only witnesses besides himself who gave testimony for defendant. The defendant testified that he did not know that the jug was in the basement, that he did not own or control it, and did not know there was any liquor in the elevator that day. Ricker testified that while he was assisting Steel to remove a spout, John Clark came there carrying a jug; that he went down into the basement and in a few minutes thereafter reappeared without the jug. Ricker further testified that he takes a drink occasionally and had on infrequent occasions had drinks with Ben Steel. Steel testified to the effect that while he and Ricker were removing a grain spout from a railroad car Clark came there carrying a jug; that Clark went down into the basement and was gone about a minute when he reappeared without the jug, but that on account of being busy at work he did not have an opportunity to advise the defendant of the jug incident before the officers arrived, and that when he saw Clark the next morning he was grieving because the officers got his liquor.

It is obvious that the extraneous statements brought before the

jury by Gearhart as matters within his personal knowledge were prejudicial in character and naturally would have an effect upon the minds of the jury. It was the duty of the jury to make its findings upon evidence regularly introduced upon the trial and not upon the personal knowledge of jurors. A statement of fact by a juror to his fellow jurors of his personal knowledge of facts involved in the case but not in the evidence, is misconduct. Of course not every act of misconduct is ground for granting a new trial. If it be trivial, or not such as to influence the jury, the misconduct will not vitiate a verdict. If facts outside of the evidence are brought before the jury as of the personal knowledge of a juror and they are likely to have influenced the mind of other jurors, the verdict should be set aside. (*State v. McCormick,* 57 Kan. 440, 46 Pac. 777; *State v. Burton,* 65 Kan. 704, 70 Pac. 640; *State v. Lowe,* 67 Kan. 183, 72 Pac. 524; *State v. Duncan,* 70 Kan. 883, 78 Pac. 427.) Here the misconduct not only showed prejudice of the juror, Gearhart, but his statements were of a kind that were likely to influence other jurors, and the state did not undertake to show that defendant did not suffer prejudice by the misconduct. The statements related to witnesses of defendant who with himself constituted a drinking bunch that were trying to protect each other, and were to the effect that he had learned the facts after a personal acquaintance of many years with them.

It is said on the other side that the testimony in the case showed that they were drinking men. On the trial, Ricker admitted that he took a drink occasionally and had on infrequent occasions drunk with Steel. Steel testified that he had not taken a drink that day nor had he seen any other person take a drink in the elevator on that day. The testimony volunteered by Gearhart was quite different. He told the other jurors facts outside of the evidence to the effect that they were long-time acquaintances of his and that within his personal knowledge they were excessive drinkers and were trying to protect each other. The extraneous facts were pressed upon the attention of the jurors as it is shown that the statements were repeated a number of times while the case was under consideration. We think the misconduct required the granting of a new trial.

Another assignment of error is the giving of an instruction in which the court undertook to define the elements of the illegal possession of intoxicating liquors. It follows:

"You are instructed that the word 'possession' as used in the statute and in these instructions means that the defendant had the control and disposi-

tion of the intoxicating liquor in question. You are further instructed that the mere fact that liquor was found in the defendant's elevator does not of itself render the defendant guilty of having intoxicating liquor in his possession. Before you can find the defendant guilty of having intoxicating liquor in his possession you must find from the evidence that he placed the liquor in the elevator or knowingly permitted some other person or persons to place it there, or that he had some right to or control over or ownership in the liquor in the elevator."

It is the last part of the instruction of which complaint is made where the court advises the jury that to convict it must be shown that defendant placed it in the elevator or that he knowingly permitted some other person to place it there or that he had some right to or control over or ownership in the liquor found in the elevator. In the first place it will be observed that the instruction to the effect that he knowingly permitted another person to place liquor in the elevator, is a separate offense from that charged in the information. The statute after defining the different offenses of selling, manufacturing, having in possession, provides that anyone who permits another to have, keep or use intoxicating liquors on his premises, shall be deemed guilty of a misdemeanor. (R. S. 21-2101.) To so combine the two offenses was confusing and erroneous. Apart from that it has been definitely determined that an instruction upon a charge of having intoxicating liquors in possession, that possession means some right, power or control over the thing, is inadequate and a ground of error. (*State v. Bozick*, 122 Kan. 517, 253 Pac. 554. See, also, *State v. Gendusa*, 122 Kan. 520, 253 Pac. 598; *State v. Podpechon*, 127 Kan. 471, 274 Pac. 197.) Here the charge was unlawful possession, as in the Bozick case. Much of the testimony centered upon the question of whether the liquor found in the elevator had been placed there by another with the permission of the defendant, and also as to whether the defendant had any right or control over it. The instruction contains substantially the improper definition for which the Bozick case was reversed. In view of the decisions cited further discussion of the point is unwarranted.

It is further urged that the testimony is insufficient to sustain the verdict, but inasmuch as there must be a reversal and a retrial of the case a discussion of that question is not warranted.

For the errors mentioned, the judgment is reversed and the cause remanded for a new trial.

JOCHEMS, J., not participating.