No. 44,298

Jasper J. Kincaid, *Appellant,* v. Herbert E. Wade, Jr. and Irene E. Brasch, *Appellees.*

(410 P. 2d 333)

Opinion filed January 22, 1966.

*R. L. White,* of Pittsburg, argued the cause, and *R. L. Letton* and *J. Curtis Nettels,* both of Pittsburg, were with him on the briefs for the appellant.

*C. R. Stauffacher,* of Columbus, argued the cause and was on the briefs for the appellee, Herbert E. Wade, Jr.

*Randall D. Palmer,* of Pittsburg, argued the cause, and *Paul L. Wilbert, Alois R. Bieber* and *Garry W. Lassman,* all of Pittsburg, were with him on the briefs for the appellee, Irene E. Brasch.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from an action for damages resulting from injuries received in an automobile collision.

The general facts are not in dispute.

The plaintiff, Jasper J. Kincaid, was driving an automobile east on U. S. Highway 166 with his wife as a passenger. While east of Baxter Springs, Kansas he saw the car which was being driven by the defendant, Irene E. Brasch, headed east traveling either very slowly or stopped on the highway. As Kincaid pulled up even with the Brasch car an automobile driven by the defendant, Herbert E.

Wade, Jr., came around the Brasch automobile, skidded out of control and collided with the Kincaid automobile. Kincaid and his wife were injured. They filed separate actions charging the two defendants with joint negligence.

The cases were consolidated for trial. The jury returned a verdict in favor of Mrs. Kincaid in the sum of $1,000.00. There has been no appeal from that verdict and the resulting judgment. A verdict was returned in favor of Jasper J. Kincaid in the amount of $2,500.00 which was only some $300.00 more than his claimed loss of time and actual medical and hospital bills.

Kincaid has appealed. He contends that the verdict is so inadequate as to indicate passion and prejudice, and the result was a compromise involving the question of liability of both defendants or whether the liability was solely the responsibility of the defendant Wade. The appellant sums up his claimed right to a new trial as follows:

"Because of misconduct of the jury in that three (3) members of the jury, on the night of May 19, 1964, after the adjournment of the Court followed in an automobile, an automobile driven by defendant Irene E. Brasch, observed her driving habits and reported their observations to the jury and that such observation and report served to influence these three jurors, and other jurors in determining the amount of the verdict for the plaintiff."

It would appear that if the verdict is inadequate the inadequacy was caused by the misconduct of certain members of the jury.

At the hearing of the motion for a new trial the foreman of the jury took the witness stand and, after stating that certain matters were reported to the jury that had not been submitted during the trial of the case, testified further:

"Q. And would you tell the Court what that was, please?

"A. Well, there was three of the ladies said that when they left court one evening that they happened to take off behind Mrs. Brasch, so they decided to follow her a ways and watch her. I presumed they was on their way that they was wanting to go anyway, and they was paying particular attention to her operating her directional signals or hand signals, and they said that about half the time she did and about half the time she didn't and they had quite a discussion over that.

. . . . . . . . . . . .

"Q. And was that evidence used in part to determine whether or not there was liability on the part of Mrs. Brasch?

. . . . . . . . . . . .

"A. It was talked about quite a bit by these women, and they was pretty well stirred up about it by just following her and watching her, and they

contended that they was satisfied that she might have and might not have had turn signals at any particular time.

* * * * * * * * * * * *

"Q. Okay. Mr. Bond, about how many times was this mentioned in the jury room?

"A. Well, it was mentioned real loud at least three times, and then there was little separate conversations which went on about the same thing.

"Q. And approximately how much time, if you know, was used in discussing this particular element?

* * * * * * * * * * * *

"A. Well, it seemed like time passed awful slow in there. I would say probably at least thirty minutes or more.

"Q. (Pause) If the Court please, I'm not certain that Mr. Bond answered my previous question. I reiterate, Mr. Bond, did this conversation and controversy about her being followed that night appear to have something to do with the decision of finding Mrs. Brasch guilty of negligence in the decision?

* * * * * * * * * * * *

"A. Well, the three that was doing all the talking about it was against Mrs. Brasch all the way, and I would say that it did in that the decision went the way it did.

* * * * * * * * * * * *

"Q. Mr. Bond, I ask you, did the controversy between finding Mrs. Brasch guilty of negligence and finding Mr. Wade guilty of negligence—strike that, Mr. Reporter. Did the controversy as to whether or not Mr. Wade was solely at fault or whether Mrs. Brasch and Wade were at fault, did the controversy involving Mrs. Brasch in the case affect the amount of damages awarded the Kincaids?

* * * * * * * * * * * *

"A. I'd say it did." (Objections and discussion in connection therewith omitted.)

We must conclude that acts of the three members of the jury constituted misconduct. It is not within the province of a juror to make an independent investigation of the driving habits of one of the parties to an action, particularly where failure to display a stop or turn signal is a material issue in the case.

The appellees make no effort to defend the jurors against the charge of misconduct, but contend that the rights of the appellant could not have been affected thereby. Our attention is called to the well established rule in this state that before a judgment will be reversed and a new trial granted because of misconduct of the jury, it must affirmatively appear that the rights of the party complaining have been prejudiced thereby. This rule is recognized in all of the cases hereinafter cited.

This court has repeatedly held, however, that where a member or members of the jury make an independent investigation of a

material issue of fact and report the results thereof to the jury during its deliberations, there is misconduct requiring an order granting a new trial. The reason for the rule is clear. A "fair trial," as the term is applied to judicial proceedings, anticipates the right to object to the admission of evidence, cross-examine the witnesses and rebut the evidence introduced. All of this is denied where a juror makes an independent investigation of an issue of fact and reports to the jury in the secrecy of its deliberations. It might also be suggested that a party could hardly be said to have a trial by jury as that term is understood in American jurisprudence, if each juror was permitted to make an independent investigation of the facts.

Specifically we have held that it was misconduct requiring or justifying a new trial for, a juror to state during deliberations that he knew of his own personal knowledge that plaintiff and defendant were copartners, *Gottleib Bros. v. Jasper & Co.*, 27 Kan. 770; two of the jurors to independently examine land where its value was in controversy, *Ortman v. U. P. Rly. Co.*, 32 Kan. 419, 4 Pac. 858; one of the jurors to state what he received for damage to a hedge similar to the one in controversy, *A. T. & S. F. Rld. Co. v. Bayes,* 42 Kan. 609, 22 Pac. 741; jurors to make independent measurements while viewing the place of an automobile collision, *Downs v. Fossey,* 144 Kan. 456, 61 P. 2d 875; *Kaminski v. Kansas City Public Service Co.,* 175 Kan. 137, 259 P. 2d 207; one of the jurors to make a special study of the arcing and jumping characteristics of electricity and report his findings to the jury in a wrongful death case, *Thomas, Administrator v. Kansas Power & Light Co.,* 185 Kan. 6, 340 P. 2d 379; using a slide rule to make mathematical computations pertaining to disputed facts, *Barajas v. Sonders,* 193 Kan. 273, 392 P. 2d 849, and making an independent view of store premises where plaintiff slipped and fell, *Levy v. Jabara,* 193 Kan. 595, 396 P. 2d 339.

Under the rules announced in the above cases we are forced to conclude that the misconduct of the three jurors amounted to the denial of a fair trial.

Appellees assert with much seriousness that it was improper to allow the jury foreman to testify in such a manner as to impeach the verdict in this action. They state:

". . . It has long been the rule in the United States and in this State that a jury cannot impeach its own verdict, nor should jurors be allowed to testify to the basis on which the jury reached its verdict or the course of their deliberations."

We face here a question which has caused much confusion among the bench and bar of this state. It has been discussed in many of our previous decisions. Perhaps a further attempt to draw a line of distinction between what are proper and what are not proper questions to be propounded to a juror in an effort to establish misconduct will tend to confuse rather than enlighten. However, we have before us a clear cut example of proper questions, and an extension of the inquiry until the questions start tampering with the mental process of the jury and become improper.

It should first be stated that this court has never adhered to the earlier general recognized practice that in the absence of statutory authority, testimony or affidavits of jurors will not be received to challenge a jury's verdict on the ground of irregularity or misconduct on the part of the jury or some one or more of the panel. (39 Am. Jur., New Trial, § 198, p. 197; 66 C. J. S., New Trial, § 180; *Mc-Donald v. Pless,* 238 U. S. 264, 59 L. Ed 1300, 35 S. Ct. 783.)

Appellees, in support of their argument, call our attention to *Anderson v. Thompson,* 137 Kan. 754, 22 P. 2d 438, where this court stated at page 758 of the opinion:

"Public policy forbids that after the jury has tried the case the court shall, on motion for new trial, proceed to try the jury. A verdict may not be impeached by an inquiry which reaches a juror's views or the reasons for those views (*L. & W. Rly. Co. v. Anderson,* 41 Kan. 528, 21 Pac. 588), or which reaches what influenced those views (*Matthews v. Langhofer,* 110 Kan. 36, 202 Pac. 634; *Jones v. Webber,* 111 Kan. 650, 207 Pac. 837; *Stone v. City of Pleasanton,* 115 Kan. 378, 223 Pac. 312). . . ."

We adhere to what was stated in the Anderson case. The case states the only limitation on questioning a jury for misconduct recognized in this jurisdiction.

A verdict may not be impeached by (1) questions as to a juror's views—conclusions, or (2) questions as to the reasons for those views—factors determining conclusions, or (3) questions which reach what influences those views—factors which influence the mental process in reaching such conclusion.

It may be said that the mental process of a juror in reaching a verdict or the factors which influence the mental process cannot be inquired into for the purpose of impeaching a verdict.

Public policy forbids the questioning of a juror on the above entitled matters for a very obvious reason, *i. e.,* there is no possible way to test the truth or veracity of the answers. In *McDonald v. Pless,* supra, while considering the right to inquire into a jury's

basis for reaching a verdict it was suggested that to permit the inquiry—

" '. . . would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' " (p. 268).

However, there is a contra matter of public policy to be considered. Improper conduct on the part of a juror is charged to the entire panel, as the jurors operate as a unit, and public policy demands that misconduct be discouraged and insofar as possible prohibited.

This court has found it advisable to permit inquiry into physical matters and misconduct which comes to the attention of other members of the panel and may be verified or denied.

The rule to be applied in this state was rather clearly stated in *Perry v. Bailey*, 12 Kan. 539, where it was held:

"The general rule is, that affidavits of jurors are admissible to explain and uphold their verdict, but not to impeach and overthrow it. But this general rule is subject to this qualification: that affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury-room, which does not essentially inhere in the verdict itself, as, that a juror was improperly approached by a party, his agent or attorney, or that the verdict was determined by lot; but not to show any matter which does essentially inhere in the verdict, as that the juror did not assent to the verdict, that he misunderstood the instructions or the testimony, or any other matter resting alone in the juror's breast." (Syl. 3. See, also, *State v. Ingalls*, 118 Kan. 628, 236 Pac. 824.)

In *Gottleib Bros. v. Jasper & Co.*, supra, it was stated in paragraph 2 of the syllabus:

"Although a juror, for the purpose of impeaching his verdict, cannot be allowed to testify to anything which rests solely and exclusively within his own personal consciousness, or which necessarily constitutes and forms a portion of his verdict, or inheres in his verdict, yet he may testify to *facts* which transpired within his own personal observation, and which transpired in such a manner that others, as well as himself, could be cognizant of them, and could testify to them; . . ."

It may be stated that many states have by statute done away with the very stringent rule that members of the jury may not be questioned as to misconduct for the purpose of challenging a verdict. The new Code of Civil Procedure, as enacted by the Kansas Legislature in 1963, contains a provision covering the question.

Although it amounts to nothing more than a legislative enactment of the existing case law, the rule to be applied is concisely stated. K. S. A. 60-444 provides in part:

"This article shall not be construed to (*a*) exempt a juror from testifying as a witness to conditions or occurrences either within or outside of the jury room having a material bearing on the validity of the verdict or the indictment, except as expressly limited by section 60-441; . . ."

The right to question a juror on the validity of a verdict is unrestricted except as the inquiry is expressly limited by K. S. A. 60-441 which provides:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

It therefore clearly appears that a juror may not be questioned or evidence received as to what influenced the mental process of the jurors or concerning the mental process by which a verdict was reached. On the other hand a juror may be questioned or evidence received as to physical facts, conditions or occurrences either within or without the jury room, which were material to the issues being determined.

Applying these rules to questions propounded to the foreman of the jury we conclude that the questions and answers disclosing that the three jurors followed the defendant, what they observed and what was reported to the jury and the time spent in the discussion were proper, but the foreman should not have been questioned as to the influence which the report made by the jurors had on the mental process of the members of the panel by which the verdict was reached. However, the misconduct was clearly disclosed by proper inquiry before the improper questions were reached.

The disposition which we are making of the case renders unnecessary the consideration of other questions raised by the appellant.

The judgment is reversed with instructions to grant a new trial on all of the issues.

APPROVED BY THE COURT.