No. 55,128

STATE OF KANSAS, *Appellee*, v. STEVEN P. MITCHELL, *Appellant*.

(672 P.2d 1)

Opinion filed October 21, 1983.

*Dennis L. Phelps*, of Wichita, argued the cause and was on the brief for the appellant.

*Geary N. Gorup*, assistant district attorney, argued the cause and, *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a jury conviction for aggravated robbery. K.S.A. 21-3427.

On Saturday, February 20, 1982, at approximately 11:00 p.m., a young black male entered the Phoenix Club, a private club on 21st Street in Wichita. The black male walked up to the bar and the bartender, Steve Virden, approached him. The black male pulled a gun on Virden and instructed him to turn over his money. Virden went to the cash register behind the bar, followed by the robber. Virden removed all the money and handed it to the robber, who then walked to the end of the bar, stopped, placed his gun directly between two customers, Robert Ortiz and John Erhartic, and instructed Virden not to move.

At trial, the State called seven witnesses. Six of the witnesses were customers at the Phoenix Club the night of the robbery. The seventh witness, Steven Virden, the bartender, was the only witness who positively identified the appellant, Steven P. Mitchell, as the robber.

Appellant initially challenges the victim's pretrial identification of him in an out-of-court lineup.

On February 22, 1982, two days after the robbery, Steve Virden viewed a lineup at the police station. After picking the appellant out of the lineup, Mr. Virden stated, "[T]here was no doubt in my mind that was the gentleman," who had robbed the bar. Appellant claims this pretrial identification was suggestive because he was the only light complexioned black person in the lineup; the only individual with light facial hair (another individual had a dark moustache); and was four inches taller than three persons in the lineup and two inches taller than one person in the lineup. In the appellant's motion to suppress the evidence of the out-of-court identification, he relied upon the preliminary hearing testimony of the identifying witness, Steve Virden. It is evident from Virden's preliminary hearing testimony that the variations in height and weight among the lineup participants did not make a significant impact.

In *State v. Baker*, 227 Kan. 377, 607 P.2d 61 (1980), this court stated the test regarding the propriety of the pretrial lineup was whether it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 227 Kan. at 378. See also *State v. Hall*, 220 Kan. 712, 717, 556 P.2d 413 (1976); *State v. Deffenbaugh*, 217 Kan. 469, 536 P.2d 1030

(1975). It must be remembered "reliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson v. Brathwaite*, 432 U.S. 98, 114, 53 L.Ed.2d 140, 97 S.Ct. 2243 (1977). Thus, an in-court identification by the identifying witness is capable of standing on its own, despite a deficient pretrial confrontation, if it is based on a witness' observation at the time of the occurrence. See *State v. Marks*, 231 Kan. 645, 649, 647 P.2d 1292 (1982).

In *Neil v. Biggers*, 409 U.S. 188, 199-200, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972), the Supreme Court suggested a number of factors to be considered in resolving the reliability of an identification:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

See also *State v. Marks*, 231 Kan. 645; *State v. Baker*, 227 Kan. 377; and *State v. Bey*, 217 Kan. 251, 257, 535 P.2d 881 (1975).

At trial the identifying witness, Steve Virden, identified the appellant as the individual who had robbed the bar. The foregoing factors support the reliability of the identification. Virden's opportunity to observe the robber consisted of close-range visual contact with the robber making no attempt to conceal his identity. The description Virden gave the police after the robbery quite accurately fits the description of the appellant. The time between the crime and the in-court identification was only three and one-half months and, finally, appellant did not challenge the reliability of the in-court identification. We find no error.

During the trial, defense counsel questioned Steve Virden concerning his testimony at the preliminary hearing. During this examination the court on its own motion interrupted defense counsel's questioning and instructed him to quote directly from the transcript when cross-examining the witness about his preliminary hearing testimony. Defense counsel continued to paraphrase the preliminary hearing testimony. The court again interrupted and stated the purpose of requiring a literal reading of the preliminary hearing transcript was to prevent the jury from guessing at what was testified to at preliminary hearing. The appellant claims these interruptions resulted in "irreparable

prejudice with the jurors" by implying defense counsel was engaged in improper questioning of the witness.

We recognize "it is a fundamental tenet of the law that the judge be scrupulously impartial in presiding at the trial of a lawsuit and that he refrain from conduct which might influence the jury in its findings . . . ." *State v. Anicker,* 217 Kan. 314, 317, 536 P.2d 1355 (1975). A judge, however, has broad discretion to control examination and "reviewing courts will not interfere unless discretion has been abused." *State v. Crouch,* 192 Kan. 602, 606, 389 P.2d 824 (1964). In another case, outside of Kansas but quite similar to the instant case, the court held: "A trial judge does not become an advocate in litigation by stopping on his own motion . . . an improper line of inquiry." *United States v. Wright,* 542 F.2d 975, 979 (7th Cir. 1976), *cert. denied* 429 U.S. 1073 (1977).

Here the trial judge correctly advised appellant's counsel as to the proper manner in which to cross-examine a witness concerning prior inconsistent testimony. This issue is without merit.

The appellant next questions the trial court's cautionary instruction concerning the eyewitness identification.

In the instant case the eyewitness identification of the appellant was a decisive issue. The trial court asked both parties to submit requested instructions in writing. Defense counsel did not do so. During a discussion of the instructions intended to be used, the appellant objected to the court's use of an instruction which incorporated the factors enumerated in the syllabus ¶ 2 of *State v. Warren,* 230 Kan. 385, 635 P.2d 1236 (1981). The appellant orally requested that the court use the actual instruction approved by this court in the body of *Warren.* The court rejected appellant's request and used its own instruction which adopted the language of the court's syllabus in *Warren.* The court told defense counsel it would accept his oral request for an instruction in lieu of a written one but suggested counsel reduce his request to writing to preserve the question for appeal. Defense counsel failed to do so.

This court has held in the past that an orally requested instruction may not be considered on appeal since it does not meet the writing requirement of K.S.A. 22-3414(3), which states:

"At the close of the evidence or at such earlier time during the trial as the judge reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests."

In *State v. Reed,* 213 Kan. 557, 562, 516 P.2d 913 (1973), we noted: "There is no statutory provision for an oral request for an instruction. Hence we cannot say that the trial court erred in refusing to honor the defendant's oral request for a specific instruction." In the instant case, however, despite appellant's failure to submit a written instruction, the court recognized the objection and merely suggested the appellant submit the instruction in written form in order to preserve it for appeal. The record clearly reflects the appellant objected to the instruction used, requested the specific instruction from the body of *Warren,* and particularized the grounds for his objection.

In *State v. Skinner,* 210 Kan. 354, 503 P.2d 168 (1972), this court reviewed an instruction orally requested when both counsel agreed the objection had been made and the court recognized the subject matter was important enough to warrant full review. Without an objection, this court may review an instruction but only if such instruction is clearly erroneous. *State v. Craven,* 215 Kan. 546, 550, 527 P.2d 1003 (1974). The trial court's use of the syllabus of *Warren* for its instruction in this case rather than the specific instruction approved in that case is not clearly erroneous, and the instruction substantially complies with *Warren.* We find no error.

Appellant next argues the lower court erred in failing to instruct the jury on the lesser included offense of robbery. The trial court's duty to instruct on lesser included offenses is governed by K.S.A. 21-3107(3), which states:

"In cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced . . . ."

The rule in Kansas is that the "duty to instruct on lesser included crimes arises only when there is evidence under which the defendant might have reasonably been convicted of the lesser offense." *State v. Staab,* 230 Kan. 329, 339, 635 P.2d 257 (1981). K.S.A. 21-3427 defines aggravated robbery as "a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." It is not contested in this case that the robber had a gun. Every witness who was in the bar at the time of the robbery testified that the robber had a gun. This is not a case where the

defendant admitted the crime but claimed not to have used a weapon. The question the jury was asked to decide was whether appellant was the robber, not whether a weapon was used. As this court noted in a similar case, the appellant was guilty of aggravated robbery or nothing. *State v. Johnson & Underwood,* 230 Kan. 309, 311, 634 P.2d 1095 (1981).

The appellant further asserts the trial court erred in using the term "deadly weapon" rather than "dangerous weapon." Although the aggravated robbery statute uses the word "dangerous" (K.S.A. 21-3427), the pattern instructions use the word "deadly." PIK Crim. 2d 56.31. This court uses the two terms synonymously. See *State v. Deutscher,* 225 Kan. 265, 589 P.2d 620 (1979), and *State v. Mitchell,* 220 Kan. 700, Syl. ¶ 5, 556 P.2d 874 (1976). Even an unloaded gun has been held to constitute a deadly or dangerous weapon despite the inability of the gun to produce harm. "[T]he purpose of the . . . aggravated robbery statute is to provide an enhanced penalty where a deadly or dangerous weapon is used," because of the victim's fear of bodily harm created by the presence of the weapon. *State v. Deutscher,* 225 Kan. at 269. This court's own interchanging of the two words does not constitute error. This issue is without merit.

Appellant next argues the trial court erred in overruling his motion for a new trial based on alleged jury misconduct.

The evening after the trial was concluded, defense counsel taped an interview with Felecia Craig, a juror in the trial. In the interview Ms. Craig testified to discussions among the jurors during their deliberations. From this testimony appellant drew up an affidavit alleging three instances of jury misconduct. They are: (1) That the verdict rendered was not Ms. Craig's verdict and therefore not a unanimous verdict; (2) that the jury considered the fact that the defendant did not testify; and (3) that the jury considered the defendant's previous criminal record of convictions.

The trial court ruled that the affidavit was not admissible because it delved into the mind of the juror which is prohibited by K.S.A. 60-441. This statute provides:

"Upon an inquiry as to the validity of a verdict . . . no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the

verdict . . . or concerning the mental processes by which it was determined."

The purpose of this statute is to preserve the integrity and finality of jury verdicts. *Ingram v. State,* 204 Kan. 836, 837, 465 P.2d 925 (1970). Further, public policy forbids the questioning of a juror on the mental process used in reaching a verdict since "there is no possible way to test the truth or veracity of the answers." *Kincaid v. Wade,* 196 Kan. 174, 178, 410 P.2d 333 (1966).

In reviewing testimony similar to Ms. Craig's affidavit that the verdict rendered was not her verdict this court has held "the mere fact a juror who joins in a verdict later professes to believe the defendant innocent is no basis for ordering a mistrial." *Crowley v. Ottken,* 224 Kan. 27, 31, 578 P.2d 689 (1978). Also, immediately after the verdict was rendered the trial court polled each juror individually, including Ms. Craig. They advised the court the verdict rendered was their own.

Ms. Craig stated in the affidavit she was under a lot of pressure from the other jurors to change her vote, so she did. This court has held a juror may not divulge what considerations influenced such juror in arriving at a verdict. *Crowley v. Ottken,* 224 Kan at 31. Ms. Craig's affidavit testimony does just that.

The last two grounds of jury misconduct alleged are unfounded. Appellant claims the jury considered appellant's failure to testify and speculated about his possible criminal record. This court has specifically stated:

" 'A juror cannot be heard to impeach his verdict by saying that in the deliberation he or any other member of the jury took into consideration the matter of the defendant having failed to testify in his own behalf when the jury was instructed not to do so.' " *State v. Myers,* 215 Kan. 600, 602, 527 P.2d 1053 (1974), quoting *State v. Dye,* 148 Kan. 421, 83 P.2d 113 (1938).

In the instant case the jury was instructed to disregard the fact that the defendant had not testified. The ruling in *Myers* is therefore applicable.

In addition, we have held jury misconduct will not constitute a ground for reversal unless the rights of the defendant are substantially prejudiced. See *State v. Arney,* 218 Kan. 369, 371, 372, 544 P.2d 334 (1975); *State v. Hanes,* 166 Kan. 271, 200 P.2d 317 (1948); *State v. Stuart,* 129 Kan. 588, 283 Pac. 630 (1930). Here there was no showing of prejudice.

Finally, we have held a juror is permitted to testify only as to

"physical facts, conditions or occurrences . . . which were material to the issues being determined." *Kincaid v. Wade,* 196 Kan. at 180. Juror Craig's affidavit breached this standard and therefore constituted inadmissible testimony concerning jury state of mind. This issue is without merit.

Appellant's final argument is that the trial court committed reversible error in failing to comply with appellant's request for jury selection pursuant to K.S.A. 22-3411a, which provides:

"In all felony trials, upon the request of either the prosecution or the defendant, the court shall cause enough jurors to be called, examined, and passed for cause before any peremptory challenges are required, so that there will remain sufficient jurors, after the number of peremptory challenges allowed by law for the case on trial shall have been exhausted, to enable the court to cause 12 jurors to be sworn to try the case."

Rather than the statutory method, the court followed a procedure whereby twelve veniremen were seated and passed for cause by both the defense and the prosecution. Each party then removed one juror by peremptory challenge. As each pair of veniremen were removed by a prosecution and a defense peremptory challenge, such challenged veniremen were replaced in the jury box by two new veniremen from the panel sitting in the gallery. Each new pair was then questioned until they were passed for cause. After a total of twelve panelists were passed for cause, the same procedure for peremptory challenges was repeated until the defense had exhausted its eight peremptory challenges and the prosecution had exercised seven peremptory challenges and waived its eighth.

Prior to 1980, K.S.A. 22-3411 (Weeks) read substantially the same as K.S.A. 22-3411a does now. Effective January 21, 1981, this court amended K.S.A. 22-3411 making the application of the statutory method of jury selection within the discretion of the court rather than mandatory. This was accomplished by replacing the word "shall" with the phrase "in its discretion, may." See 228 Kan. clvii. The court's authority to amend a statute was granted by the legislature in K.S.A. 22-4601 (Weeks), which provides:

"The supreme court shall have power to supplement or amend the provisions of this chapter insofar as they pertain to forms of process, writs, pleadings, motions and practice and procedure in the supreme court, district courts and other judicial tribunals to which they are applicable. Such supplements and amendments shall not abridge, enlarge or modify any substantive right and shall

preserve the right of trial by jury, oral examination of witnesses, and the right of appeal."

In 1981, K.S.A. 22-4601 and K.S.A. 22-3411, in both amended and unamended form, were repealed following our decision in *State v. Kearns*, 229 Kan. 207, 209, 623 P.2d 507 (1981), where we held: "Article 2, § 20, of the Kansas Constitution is a restriction upon the legislature's power to make a new law except in the manner prescribed." The court's amendment authority violated this constitutional mandate as well as the doctrine of separation of powers. The unamended language of K.S.A. 22-3411 was then re-enacted as K.S.A. 22-3411a by the legislature. See Revisor's Note to K.S.A. 22-3411a.

The trial court in the instant case held the enactment of K.S.A. 22-3411a by the legislature violated the doctrine of separation of powers and was therefore unconstitutional, stating:

"I think the only Constitutional ground infringed upon is the separation of power between the Legislature and the Court, and if we are to have an independent judiciary, we have to have — when judicial responsibility is encroached upon, we have to recognize it and act upon it with some resolution.

. . . .

"It appears very clear to me that the Legislature doesn't have the right to reverse the Supreme Court of Kansas . . . ."

The trial court interpreted the Legislative acts of repealing K.S.A. 22-4601 and K.S.A. 22-3411 and the simultaneous enactment of K.S.A. 22-3411a as acts in defiance of a Supreme Court rule. That conclusion is incorrect. K.S.A. 22-3411a was enacted to replace the void left by the repeal of the statute unconstitutionally amended by this court. There was no court rule.

At issue is whether the Supreme Court has exclusive constitutional power to make rules pertaining to court administration and procedure. To answer this requires an examination of the doctrine of the separation of powers. We have long recognized that doctrine as applying to Kansas. See *In re Sims, Petitioner*, 54 Kan. 1, 37 Pac. 135 (1894). However, the basis for the doctrine was not spelled out with complete analysis until eloquently stated for this court by Chief Justice Fatzer in *Van Sickle v. Shanahan*, 212 Kan. 426, 447, 511 P.2d 223 (1973):

"The concept of a republican form of government and by implication the doctrine of separation of powers were the underlying assumption upon which the framework of the new government was developed. In reaching this conclusion, this court holds that the doctrine of separation of powers is an inherent and integral

element of the republican form of government, and separation of powers, as an element of the republican form of government, is expressly guaranteed to the states by Article IV, Section 4 of the Constitution of the United States."

It would be difficult to state the principle more succinctly. The Federal Constitution guarantees the separation of powers to the states under the guaranty clause.

Let us now examine the source and extent of judicial power in Kansas. Article 3, section 1 of the Kansas Constitution provides in pertinent part:

"The judicial power of this state shall be vested exclusively in one court of justice . . . . The supreme court shall have general administrative authority over all courts in this state."

It is apparent from the unambiguous words of the constitution that the judicial power of Kansas is vested *exclusively* in the unified court system. This leaves for definition the term "judicial power." It has been defined as the power to hear and determine a cause and the rights of the parties to a controversy, and to render a binding judgment or decree based on present or past facts under existing laws. 16 Am. Jur. 2d, Constitutional Law § 307, p. 824. This definition, however, pertains only to the traditional concept of judicial power. The Constitution vests in the Supreme Court the general administrative authority over the court system. This is the area lacking historical definition. In *State, ex rel., v. Dawson,* 86 Kan. 180, 188, 119 Pac. 360 (1911), we held:

"When a constitution gives a general power, or enjoins a duty, it also gives, by implication, every particular power necessary for the exercise of the one, or the performance of the other."

We conclude the Supreme Court has constitutional authority under the general grant of power of administration over the court systems to promulgate and enforce reasonable rules regulating judicial administration and court procedure as necessary for the administration of justice. See 20 Am. Jur. 2d, Courts § 82, p. 444. Supreme Court rules have the force of law. Procedure is defined as the mode or proceeding by which a legal right is enforced. It is the form, manner and order of conducting suits or prosecutions, including appellate review. *Jones v. Garrett,* 192 Kan. 109, 114-15, 386 P.2d 194 (1963).

Jury selection is a part of court procedure. As such it falls within the ambit of this Court's rulemaking authority. Under that

authority we are now considering the adoption of new jury standards. However, we indicated differently in *Board of Greenwood County Comm'rs v. Nadel,* 228 Kan. 469, 479, 618 P.2d 778 (1980), where we stated, "There is no violation of the doctrine of separation of powers when the legislature merely changes procedural methods." The procedural methods referred to were those conferring jurisdiction. Jurisdiction is a legislative matter. The procedure conferring that jurisdiction is therefore also legislative. Our statement in *Greenwood* is overbroad as illustrated by Syl. ¶ 5 thereof which correctly states the law: "The legislature has full authority to establish procedural prerequisites to the exercise of jurisdiction by the district courts over administrative appeals." 228 Kan. 469.

We see then the judicial function falls into two categories: the traditional, independent decision-making power and the rule-making authority over administration and procedure. The power to make decisions cannot be delegated to a nonjudicial body or person, even with the consent of the litigants. See 16 Am. Jur. 2d, Constitutional Law § 311, p. 830. On the other hand, the court's power over court administration and procedure can be performed in cooperation with the other branches of government through the use of agreed-upon legislation without violating the separation of powers doctrine. Examples are the Code of Civil Procedure, K.S.A. 60-101 *et seq.* and the Code of Criminal Procedure, K.S.A. 22-2101 *et seq.*

By the same token, the judiciary can acquiesce in legislative action in this area of the judicial function. The constitutional power over court administration and procedure remains vested in the judicial branch even though legislation is used to help perform its function. Problems arise only when court rules and a statute conflict. Under such circumstances, the court's constitutional mandate must prevail.

In the case at bar there is no conflict between legislation and court rules. There are no court rules pertaining to the exercise of peremptory challenges of a jury. K.S.A. 22-3411a stands alone. The absence of the adoption of such a rule amounts to acquiescence on the part of the judicial branch in legislation. K.S.A. 22-3411a is therefore not in violation of the doctrine of separation of powers and is constitutional.

However, that does not dispose of this case. The trial court did

not follow the mandate of K.S.A. 22-3411a in providing for peremptory challenges to the jury. The appellant was entitled to eight such challenges. He received eight challenges but he had to exercise them piecemeal rather than in comparison to the entire panel. It is readily apparent the statute provides a defendant a more favorable method of challenging. The question remaining is whether the infraction prejudiced the appellant. We have repeatedly held errors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, when substantial justice has been done, do not require reversal. See *State v. Sandstrom,* 225 Kan. 717, 595 P.2d 324, *cert. denied* 444 U.S. 942 (1979); *State v. Roth,* 207 Kan. 691, 486 P.2d 1385 (1971); *Manufacturing Co. v. Bridge Co.,* 81 Kan. 616, 106 Pac. 1034 (1910). Here the method of challenge ordered by the trial court did not violate the accused's constitutional rights to a fair trial. There is no affirmative showing of prejudice to the appellant or that the result of the trial would have been different had the statute been followed. We find the error harmless in this case. However, K.S.A. 22-3411a must henceforth be followed, if requested.

The judgment is affirmed.

PRAGER, J., concurs in the result.