The Honorable Ron Rogg Administrative Judge for the Eighteenth Judicial District Room 1110, 11th Floor 525 N. Main Wichita, Kansas 67203
Dear Judge Rogg:
You request our opinion concerning whether K.S.A. 19-260b's requirement that judges of the district courts in Johnson and Sedgwick counties requisition all court purchases through a county purchasing officer violates the separation of powers doctrine by virtue of article 3, section 1 of the Kansas constitution which gives the Supreme Court general administrative authority over all district courts.
K.S.A. 19-260b states, in part, as follows:
 "[T]he judge or judges of the district court in the county [Johnson and Sedgwick] shall be required to make requisition for all purchases of supplies and equipment contracts, service and supply agreements and other transactions that necessitate the expenditure of county funds pertaining to their respective offices . . . through the office of the county purchasing officer in the form and manner prescribed by the board of county commissioners . . . the county purchasing officer shall purchase all supplies and equipment and negotiate all contracts, service and supply agreements and other transactions that necessitate the expenditure of any county funds in the amount of $2,000 or more on the basis of competitive bids. . . ."
K.S.A. 19-260b was enacted in 1971 when Sedgwick county had a court of common pleas and Johnson county had magistrate courts. K.S.A. 20-2001 etseq. and K.S.A. 20-2501 et seq. (repealed L. 1976, ch. 146). K.S.A. 20-2008
(repealed L. 1976, ch. 146) provided that all purchases in the court of common pleas for Sedgwick county were to be made in compliance with K.S.A. 19-260b. In 1972, one year after the enactment of K.S.A. 19-260b, article 3, section 1 of the Kansas constitution was amended to give the Supreme Court "general administrative authority" over all of the courts in the state. In 1976, the court of common pleas in Sedgwick county and the magistrate court in Johnson county were abolished and numerous statutory changes were made expanding the administrative authority of both the Supreme Court and the district courts. K.S.A. 20-101 was amended to give the Supreme Court general administrative authority over all the courts in the state with the chief justice executing and implementing "the administrative rules and policies . . . including . . . the financial affairs of the court system." K.S.A. 20-329 was amended to give to district court administrative judges the responsibility for and general supervisory authority over the clerical and administrative functions of the district court. K.S.A. 20-349 was enacted which provides that after the amount of the district court budget is established, the expenditures under such budget "shall be under the control and supervision of the administrative judge, subject to Supreme Court rules relating thereto."
In State v. Greenlee, 228 Kan. 712 (1980), the Kansas Supreme Court concluded that the statutes authorizing diversion agreements by the district attorney (K.S.A. 22-2907 and 22-2908) did not violate the separation of powers doctrine by virtue of an unconstitutional delegation of judicial power to the executive branch (i.e. the district attorney).
 "One of appellant's arguments is the decision to divert is a quasi-judicial function and as such is tanamount to pretrial probation and therefore is not inherently within the purview of the executive branch of government. . . . K.S.A. . . . 22-2912 provides that the courts may adopt a diversion plan and if they do, the court is required to follow the guidelines of K.S.A. . . . 22-2908. If the program were established by court rule and administered by the courts then, of course, the proceedings would be a judicial function. However, the exercise of a similar function by the prosecutor . . . does not necessarily constitute an unconstitutional delegation of judicial power to the executive branch. . . .
 "The basic meaning of the separation of powers doctrine is that the whole power of one department should not be exercised by the same hands which possess the whole power of either of the other departments. (Citations omitted). It does not necessarily follow, however, that an entire or complete separation is either desirable or was ever intended by the framers of the Constitution. The fact that the powers of one department may overlap with another department's powers has long been a recognized fact. Throughout the judicial history of this state early decisions attempted to apply the doctrine strictly, refusing to tolerate any overlapping of powers. (Citations omitted). The more recent cases have modified the doctrine, taking a more pragmatic, flexible and practicable approach giving recognition to the fact that there may be a certain degree of blending or admixture of the three powers of government and that absolute separation of powers is impossible." 228 Kan. at 715-718.
In State v. Mitchell, 234 Kan. 185 (1983), the court examined its exclusive power to make rules pertaining to court administration in a separation of powers context. In Mitchell, the district court utilized its own procedure for challenges to venireman rather than following K.S.A. 22-3411a which requires that all jurors be passed for cause before peremptory challenges are used. Finding no Supreme Court rule on the issue of challenges to venireman the Supreme Court concluded that the judiciary had acquiesced in the legislative action.
 "We conclude that the Supreme Court has constitutional authority under the general grant of power of administration over the court systems to promulgate and enforce reasonable rules regulating judicial administration and court procedure as necessary for the administration of justice. (Citations omitted). Supreme Court rules have the force of law.
 "We see then the judicial function falls into two categories: the traditional, independent decision-making power and the rule-making authority over administration and procedure. The power to make decisions cannot be delegated to a nonjudicial body or person, even with the consent of the litigants. (Citations omitted). On the other hand, the court's power over court administration and procedure can be performed in cooperation with the other branches of government through the use of agreed-upon legislation without violating the separation of powers doctrine. Examples are the Code of Civil Procedure and the Code of Criminal Procedure.
 "By the same token, the judiciary can acquiesce in legislative action in this area of the judicial function. The constitutional power over court administration and procedure remains vested in the judicial branch even though legislation is used to help perform its function. Problems arise only when court rules and a statute conflict. Under such circumstances, the court's constitutional mandate must prevail.
 "In the case at bar there is no conflict between legislation and court rules. There are no court rules pertaining to the exercise of peremptory challenges of a jury. K.S.A. 22-3411a stands alone. The absence of the adoption of such a rule amounts to acquiescence on the part of the judicial branch in legislation. K.S.A. 22-3411a is therefore not in violation of the doctrine of separation of powers and is constitutional." 234 Kan. 194-195 (1984).
We believe that the Mitchell rationale applies here and conclude that K.S.A. 19-260b does not offend the separation of powers doctrine because of the apparent acquiescence by the judiciary in K.S.A. 19-260b. While this conclusion may appear to be at odds with our conclusion in Attorney General Opinion No. 96-4 which concluded that district courts are not required to follow county purchasing policies because such policies violate K.S.A. 20-349 which gives administrative judges control over all budget expenditures, the distinction is that in this situation we have a statute that requires that district courts in Sedgwick and Johnson counties requisition their purchases through the county purchasing officer. This statute carries with it the presumption of constitutionality and cannot be invalidated simply because it appears to be anachronistic. K.S.A. 19-260b was on the books in 1976 when the legislature enacted the legislation which vastly expanded the administrative authority of the Supreme Court and, for whatever reason, was not repealed. Consequently, in the absence of a Supreme Court rule on this issue (and, to our knowledge none exists), it is our opinion that the judiciary has acquiesced in K.S.A. 19-260b and therefore, it does not violate the separation of powers doctrine.
However, this does not dispose of your query because Sedgwick county has chartered out of K.S.A. 19-260b and it is our opinion that the charter resolution is an invalid exercise of home rule power pursuant to K.S.A. 19-101a and 19-101b which prohibits the use of home rule power when it affects the courts located in the county.
Charter resolution no. 50 exempts Sedgwick county from K.S.A. 19-260a
(appointment of purchasing officer in Johnson and Sedgwick counties) and K.S.A. 19-260b and provides substitute provisions which, among other things, authorizes a director of purchasing to purchase all supplies, equipment and services for all elected officials including the judges of the eighteenth judicial district. K.S.A. 19-101b states, in relevant part, as follows:
 "(a) Any county, by charter resolution, may elect in a manner prescribed in this section that the whole or any part of any act of the legislature applying to such county other than those acts concerned with those limitations, restrictions or prohibitions set forth in subsection (a) of K.S.A. 19-101a, and amendments thereto, shall not apply to such county." (Emphasis added).
Subsection (a) of K.S.A. 19-101a states, in relevant part, as follows:
 "(a) The board of county commissioners may transact all county business and perform all powers of local legislation and administration it deems appropriate, subject only to the following limitations, restrictions, or prohibitions:
. . . .
 "(3) Counties may not affect the courts located therein." (Emphasis added).
Under K.S.A. 19-101a the home rule powers of a county are derived from the legislature and, therefore, they are subject to the specific statutory limitations and restrictions in that a county may not affect the courts located therein. In Board of Sedgwick County Commissioners v.Noone, 235 Kan. 777 (1984), a county resolution that required the clerk of the district court to pay over to the county treasurer all fines and costs collected for violation of county resolutions was determined to be an invalid use of county home rule power because it affected the courts. In addition, former Attorney General Robert T. Stephan concluded that any charter resolution that attempted to affect the courts in the county would violate K.S.A. 19-101a's prohibition. Attorney General Opinion No. 79-115. See also Attorney General Opinion No. 80-87 (county may charter out of a nonuniform statute but must abide by the limitations of K.S.A.19-101a which prohibits the exercise of home rule power which may affect the courts located therein); Attorney General Opinion No. 86-21 (county commissioners have no authority to establish court business hours); Attorney General Opinion No. 86-55 (county may not exempt itself by charter resolution from statute which establishes limits on the tax the district court clerk may impose as a filing fee for the benefit of the county law library).
While we believe that K.S.A. 19-260b does not offend the separation of powers doctrine and is constitutional, it is our opinion that Sedgwick county charter resolution no. 50 as applied to the district court judges of the eighteenth judicial circuit, is invalid because it attempts to affect the courts in violation of K.S.A. 19-101a and 19-101b.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm