No. 110,673

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER CRABB,
*Appellant*.

SYLLABUS BY THE COURT

1.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

2.

The Kansas Legislature has mandated that in all felony trials, upon the request of either the prosecution or the defendant, the court shall cause enough jurors to be called, examined, and passed for cause before any peremptory challenges are required.

3.

Our Kansas Supreme Court has ruled that a district court errs if it does not comply with the statutory method of selecting a jury in felony trials upon the request of either party.

4.

In order to find an error harmless under K.S.A. 2014 Supp. 60-261, a Kansas court must be able to declare that the error did not affect a party's substantial rights, meaning it

will not or did not affect the trial's outcome. The party benefitting from the error always bears the burden of proving it harmless under this standard.

5.

Based on the record herein, where the district court used what is commonly known as the hot-box method of jury selection over the defendant's objection, the State has failed to meet its burden of proving the error was harmless.

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed February 6, 2015. Reversed and remanded.

*Lydia Krebs* and *Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS, J., and RICHARD B. WALKER, District Judge, assigned.

MALONE, C.J.:  Christopher Crabb appeals his conviction of one count of interference with law enforcement. Crabb claims the district court committed reversible error by using what is commonly known as the "hot-box" method of jury selection over Crabb's objection instead of using the statutory method of jury selection set forth in K.S.A. 22-3411a. He also argues that the district court erred in instructing the jury and that he was denied a fair trial based on prosecutorial misconduct and cumulative error. We hold the district court erred by using the hot-box method of jury selection over Crabb's objection, and the State has failed to establish the error was harmless. Thus, we reverse Crabb's conviction and remand for a new trial.

*Crabb ran from law enforcement officers*

On July 25, 2012, Special Agent Joe Cox of the Topeka Parole Office spoke with Crabb in Topeka and learned that Crabb was on parole, or postrelease supervision, and he was being supervised out of Junction City. Cox spoke to Crabb's parole officer in Junction City and learned that Crabb did not have permission to be in Topeka. Cox told Crabb to report to his parole officer in person the next morning and warned that if he failed to do so, the Kansas Department of Corrections (KDOC) might issue a warrant for his arrest.

The next day, Crabb called his parole officer and told her that he could not find a ride back to Junction City. She told him to visit her office by 4 p.m. that day. Cox failed to show up or call the parole office, and the KDOC issued a warrant for his arrest.

On August 22, 2012, Cox was driving an unmarked Chevy Tahoe in Topeka and saw a man about two blocks away that he believed to be Crabb. Cox drove by the man and confirmed that it was Crabb. Cox made eye contact with Crabb as he exited his vehicle. Crabb immediately started running, and Cox yelled, "Police, Chris, stop running." Cox believed that Crabb saw his police uniform—which he wore as a parole officer and had the word "police" printed in block letters across the chest—before he started running. Cox radioed Deputy United States Marshals Travis Edwards and Jeff Andrew, who were nearby in an unmarked car, and told them that Crabb was running.

Crabb ran down the street until he came upon Edwards and Andrew. He then ran in between some houses, and Edwards and Andrew pursued him on foot. Cox later testified that while Edwards was chasing Crabb, he yelled, "Police. Get on the ground." Andrew ultimately stopped Crabb, and the law enforcement officers placed him in handcuffs. Cox later testified that about 30 seconds had elapsed between the time he exited his vehicle and the time Andrew stopped Crabb. Cox testified that while he was

transporting Crabb to the jail, he had asked him, "If all you had was a parole warrant why did you take off running?" Crabb responded that he did not know the parole violation was the only reason for his arrest and that he ran "as just a habit." Cox testified that Crabb had indicated that he knew Cox was a law enforcement officer when he ran from him.

*The trial judge insisted on using the "hot-box" method of jury selection*

On August 23, 2012, the State charged Crabb with one count of interference with law enforcement, a nonperson felony. The case proceeded to a jury trial in April 2013. The trial resulted in a deadlocked jury, so the district court declared a mistrial.

Crabb's second trial commenced on July 8, 2013. At the start of the trial, outside the presence of the pool of jurors, the district judge described to counsel how the jury would be selected for the trial. Specifically, the judge stated:

> "I decided that this morning we are going to have jury selection by what has commonly been referred to as hot box. That means we are going to call 12 people into the jury box who will be examined by the Court and by counsel. All other people will remain in the gallery and be able to listen to court proceedings. At the time that 12 people have been passed for cause, then each party will have the opportunity to exercise a peremptory challenge and the State will go first, if you wish to exercise one or you may pass. Then the defendant will have the opportunity to exercise a peremptory challenge or may pass, until such time as both parties have either passed, leaving 12 people in the jury box, or each party has exercised six peremptory challenges, then we will have our jury."

In response, defense counsel asked what statutory provision the judge was proceeding under, and the judge replied, "Same statute. This is allowed." Counsel did not seem to be familiar with the hot-box method of selecting the jury, and both counsel asked the judge several questions about how the method worked. After the questioning, defense

4

counsel objected to the procedure outlined by the judge because it would "limit—or narrow[] down the jury pool," but the court proceeded with the method anyway.

After a recess, the parties proceeded with jury selection in the manner outlined by the district court. Crabb and the State were each allowed six peremptory challenges. The State ultimately used five of its peremptory challenges, and Crabb used all six.

During the trial, Crabb testified on his own behalf. He told the jury that on the day in question, he had gone to visit a female friend and saw a group of men standing near her apartment. He said that his friend told him he should "probably go" because her ex-boyfriend, who was one of the men in the group, "didn't like the idea of [Crabb] hanging out down there." As Crabb was leaving the apartment building, he saw that the men were "looking at [him] a little bit." Crabb said this made him "a little bit nervous."

Crabb testified that as he was walking down the street, a black vehicle drove past him and slammed on the brakes. Thinking it was the men from the apartment and concerned that they might be armed, he started running. Crabb testified that the first time he had realized that the police were chasing him was when he ran into Andrew and complied with his order to get on the ground. Crabb said he had not heard anyone yelling at him before he saw Andrew. After hearing the evidence, the jury found Crabb guilty as charged of one count of interference with law enforcement. The district court sentenced Crabb to 16 months in prison. Crabb timely appealed the district court's judgment.

On appeal, Crabb claims the district court erred by using the hot-box method of selecting the jury. He argues that the jury selection procedure used by the district court violated K.S.A. 22-3411a, which provides that the court shall cause enough jurors to be called, examined, and passed for cause before any peremptory challenges are required. Crabb asserts that he preserved the issue for appeal by objecting to the jury selection

5

method used by the district court. Finally, Crabb argues that because the State cannot prove the district court's error was harmless, this court must reverse his conviction.

The State argues that Crabb did not preserve this issue for appeal because the requirements of K.S.A. 22-3411a apply only "upon the request of either the prosecution or the defendant" and Crabb did not specifically ask the district court to follow the statutory procedure at trial. The State also contends that any error in the district court's method of jury selection was harmless because there is no reasonable possibility that it could have affected the outcome of the trial.

The parties agree that resolution of this issue requires statutory interpretation. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

*The district court erred by failing to comply with K.S.A. 22-3411a*

K.S.A. 22-3411a, which was enacted by the legislature in its current form in 1981, provides as follows:

> "In all felony trials, upon the request of either the prosecution or the defendant, the court shall cause enough jurors to be called, examined, and passed for cause before any peremptory challenges are required, so that there will remain sufficient jurors, after the number of peremptory challenges allowed by law for the case on trial shall have been exhausted, to enable the court to cause 12 jurors to be sworn to try the case."

We will first address the State's argument that Crabb did not preserve this issue for appeal. The State notes that K.S.A. 22-3411a applies only "upon the request of either the prosecution or the defendant." The State argues there was no error because Crabb did not specifically ask the court to follow the requirements of K.S.A. 22-3411a at trial.

6

But as Crabb points out, his counsel specifically asked what statutory provision the district court was proceeding under when the judge explained the jury selection method that was going to be used at trial. After asking the judge several questions about the proposed method, defense counsel expressly objected to the procedure outlined by the district court. Although defense counsel never specifically requested the district court to follow the procedure set forth in K.S.A. 22-3411a, we find this shortcoming to be a distinction without a difference. Here, defense counsel expressly objected to the jury selection method used at trial, stating that it would limit or narrow the jury pool. We find no merit in the State's argument that Crabb did not preserve this issue for appeal.

Crabb cites *State v. Mitchell*, 234 Kan. 185, 192-96, 672 P.2d 1 (1983), to support his argument that the district court erred by failing to use the jury selection procedure set forth in K.S.A. 22-3411a. In *Mitchell*, the district court used a jury selection method identical to the hot-box method used by the district court at Crabb's trial. In finding that the district court erred in the manner that it selected the jury, our Supreme Court stated:

> "The trial court did not follow the mandate of K.S.A. 22-3411a in providing for peremptory challenges to the jury. The appellant was entitled to eight such challenges. He received eight challenges but he had to exercise them piecemeal rather than in comparison to the entire panel. It is readily apparent the statute provides a defendant a more favorable method of challenging." 234 Kan. at 195-96.

However, the *Mitchell* court found the error to be harmless in that case because there was "no affirmative showing of prejudice to the appellant or that the result of the trial would have been different had the statute been followed." 234 Kan. at 196. Our Supreme Court warned that it would be less forgiving of such errors in the future by concluding its opinion with the admonition that "K.S.A. 22-3411a must henceforth be followed, if requested." 234 Kan. at 196. Since 1983, no reported case in Kansas has revisited the jury selection issue addressed by the court in *Mitchell*.

7

Based on *Mitchell*, it is clear that the district court erred by using the hot-box method of jury selection over Crabb's objection, as opposed to using the statutory method of jury selection. Both jury selection methods allow the parties to exercise all the peremptory challenges allowed by statute. See K.S.A. 2014 Supp. 22-3412. However, the statutory method of jury selection is superior to the hot-box method for at least two reasons. First, as the *Mitchell* court noted, the hot-box method requires counsel to exercise their peremptory challenges piecemeal rather than in comparison to the entire panel. How can a party properly exercise a peremptory challenge to strike a juror when the next juror seated by the court may be even worse, from that party's perspective, than the juror who was initially challenged? The statutory method of jury selection allows counsel to examine all prospective jurors before any peremptory challenges are required, thereby allowing counsel to compare all prospective jurors before deciding how the peremptory challenges should be exercised.

Second, under the hot-box jury selection method, after the parties have exercised all peremptory challenges and the final juror is seated in the jury box, that final juror may only be removed for cause. There is no remaining peremptory challenge for the final juror seated by the court. Thus, unless a party is successful in striking the final juror for cause, the final juror will remain on the jury. And a party may not want to run the risk of offending the final juror by challenging that juror for cause, in case the trial judge should overrule the challenge.

*The State has failed to prove the error was harmless*

Having found that the district court erred in using the hot-box method of jury selection over Crabb's objection, we now turn to whether the error requires Crabb to receive a new trial. A district court's error may be harmless if the error did not affect any party's substantial rights. See K.S.A. 2014 Supp. 60-261. In *Mitchell*, 234 Kan. at 196, the court found that the jury selection error was harmless because there was "no

8

affirmative showing of prejudice" to the defendant. In other words, the *Mitchell* court placed the burden on the defendant to make an affirmative showing that the result of the trial would have been different had the error not occurred. However, harmless error analysis has changed significantly in Kansas since *Mitchell* was decided.

In *State v. Ward*, 292 Kan. 541, 564-65, 256 P.3d 801 (2011), *cert denied* 132 S. Ct. 1594 (2012), the Kansas Supreme Court held that to find an error harmless under K.S.A. 60-261, a Kansas court must be able to declare the error "did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome." The party benefitting from the error always bears the burden of proving it harmless under this standard. *State v. Herbel*, 296 Kan. 1101, 1110, 299 P.3d 292 (2013). The level of certainty by which a court must be convinced depends upon whether the error implicates a federal constitutional right. *Ward*, 292 Kan. at 565-66. Where an error implicates a statutory right but not a federal constitutional right, the party benefitting from the error must persuade the court that there is no reasonable probability that the error affected the trial's outcome in light of the entire record for it to be deemed harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

Here, the jury selection error implicates a statutory right but not a federal constitutional right. The State, as the party benefitting from the error, bears the burden of proving there is no reasonable probability that the error affected the trial's outcome. In asserting that the error was harmless, the State argues in its brief that "Crabb makes no argument that he was prejudiced in any way due to the district court's procedure in jury selection. Crabb makes no assertion or suggestion that any of the jurors were biased, impartial, or prejudiced against him." But this argument fails to recognize that the burden is on the State, rather than Crabb, to show that the error was harmless.

The State also notes that Crabb was not forced to waive any of his peremptory challenges. But as Crabb points out, if he had received the opportunity to compare all

9

potential jurors before making his peremptory challenges, he might have used his challenges on different jurors. The evidence of Crabb's guilt was not overwhelming, his motives for causing the brief chase by law enforcement were subject to more than one reasonable interpretation, and his first trial resulted in a deadlocked jury. The State has made no affirmative showing that the jury selection error did not affect Crabb's substantial rights. We stop short of finding that the use of the hot-box procedure constituted structural error. There may be cases in which the State could meet its burden of proving that the error did not affect the trial's outcome. But based on the record herein, we find that the State has failed to persuade this court that the error was harmless.

We note that the hot-box method, sometimes called the "jury-box" method, is permitted in some federal courts. See, *e.g.*, *United States v. Severino*, 800 F.2d 42, 47 (2d Cir. 1986). The Second Circuit Court of Appeals has found that federal trial courts have broad discretion in determining how peremptory challenges will be exercised and that the hot-box method is not an abuse of that discretion so long as the defendant is not prevented from using all of his or her peremptory challenges. See *United States v. Thompson*, 76 F.3d 442, 451-52 (2d Cir. 1996). But the fact that some federal courts permit the use of the hot-box jury selection method does not mean that Kansas courts are free to ignore the mandate of K.S.A. 22-3411a for selecting juries in felony trials. Likewise, the fact that some federal courts allow the hot-box method of jury selection does not mean that a Kansas court's failure to comply with K.S.A. 22-3411a is always harmless error.

In sum, the Kansas Legislature has mandated one method of jury selection in all felony trials upon the request of either party. Our Supreme Court has stated that a district court errs if it does not comply with the requirements of K.S.A. 22-3411a—and for good reason—the statutory method provides the fairest and most effective way of selecting a jury in felony trials. Based on the record herein, we conclude the State has failed to meet its burden of proving the error harmless. Therefore, we reverse Crabb's conviction of

interference with law enforcement and remand for a new trial. Because our ruling on this issue is dispositive, we need not address the other issues Crabb has raised in this appeal.

Reversed and remanded.