No. 120,768

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREMY J. WILLIAMS,
*Appellant*.

SYLLABUS BY THE COURT

1.

The purpose of a peremptory challenge is to remove prospective jurors who, though not subject to challenge for cause, are believed to be inclined against a party's interests. Courts generally give parties wide latitude in exercising peremptory challenges as long as their reason for doing so is nondiscriminatory.

2.

Appellate courts review a district court's decision allowing a party to use a peremptory challenge for an abuse of discretion.

3.

K.S.A. 22-3411a does not limit when a party may use a peremptory challenge. Instead, the statute indicates a district court may not require a party to use any peremptory challenges until a jury is passed for cause. But nothing in the statute prohibits a party from using a peremptory challenge earlier if the party chooses to do so.

4.

Jurors are not witnesses. Answers to questions during voir dire are not evidence.

1

5.

Appellate courts have traditionally reviewed challenges to a verdict form under the same standard as jury instructions. But a verdict form is not a jury instruction; the two serve different purposes. In general, the verdict form does not instruct the jury on the laws it will apply. Instead, the jury uses that form to record its decision on each count, claim, or question presented once that decision has been reached.

6.

This court is duty-bound to follow Kansas Supreme Court precedent unless the court has indicated it is departing from its previous position.

7.

K.S.A. 2019 Supp. 21-2512 provides an avenue for individuals convicted of certain crimes, including rape, and held in state custody to petition the court that entered judgment for forensic DNA testing. A district court's summary denial of a petition for postconviction DNA testing under K.S.A. 2019 Supp. 21-2512 and a court's interpretation of that statute are questions of law over which appellate courts exercise unlimited review.

8.

Upon receiving a petition under K.S.A. 2019 Supp. 21-2512, the district court ultimately must determine whether the requested DNA testing meets the requirements of K.S.A. 2019 Supp. 21-2512(a)(1)-(3) and whether the test will produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced.

9.

A petition for postconviction DNA testing under K.S.A. 2019 Supp. 21-2512 may be filed at any time after a defendant's conviction.

10.

Ordinarily, appellate courts presume the district court found all facts necessary to support its judgment. But when the record does not support such a presumption and the lack of any factual findings or explanation of the court's decision precludes meaningful appellate review, an appellate court may remand a case for further findings and conclusions.

Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed July 10, 2020. Affirmed in part, reversed in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., WARNER, J., and LAHEY, S.J.

WARNER, J.: A jury convicted Jeremy Williams of two counts of rape for having sex with a 13-year-old girl. Williams now challenges the fairness of his trial and asserts the district court erred when it summarily denied his request for postconviction DNA testing. After having reviewed the parties' arguments and the record before us, we affirm Williams' convictions. But we remand the case so the district court can correct an error in the journal entry memorializing Williams' sentence. And we reverse the district court's summary denial of Williams' request for DNA testing and remand the case so the district court can articulate its findings and conclusions under the procedure outlined by Kansas statutes and Kansas Supreme Court caselaw.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2015, P.W., then 13 years old, moved from Wichita to Catharine to live with her cousin. While in Catharine, she began texting Williams, who she met on an online dating site. Later that month, P.W. ran away to Hays, where she called Williams—then 25 years old—and asked for a ride to Wichita. Williams drove to Hays, picked up P.W., and returned to Wichita later that day.

P.W. and Williams provided different accounts as to what occurred over the next few days. According to P.W., Williams drove her back to his house, where she stayed for a few days. During that time, they had sex two or three times in Williams' bedroom. According to Williams, he dropped P.W. off at her friend's apartment complex the evening he picked her up from Hays. Williams denied having sex with P.W. or taking her to his house.

Two days after she left Catharine, Williams drove P.W. to a Walmart in Wichita so she could collect a money wire from her cousin. Wichita police had learned P.W. had run away and would be collecting the transfer. When P.W. and Williams arrived, police identified them and took them into custody.

Police interviewed P.W. twice that day. During the first interview, P.W. said Williams had previously kissed her and rubbed his hands on her body, but she denied having sex with him. During the second interview, she stated she had sex with Williams twice. P.W. and Williams subsequently underwent exams by a forensic nurse, who collected DNA swabs. A DNA analysis of P.W.'s vaginal and anal swabs indicated the presence of sperm cells. A comparison of Williams' DNA to that found in the sperm on P.W.'s posterior fourchette swab (which had the greatest number of sperm cells) could

4

not exclude Williams as a contributor. The probability of selecting an unrelated random individual with DNA consistent with the sperm DNA profile was 1 in 1.8 quintillion.

The State charged Williams with three counts of rape. Williams' case was eventually tried to a jury, who found him guilty of two of the charges and not guilty on the third. Because rape is an off-grid felony, the district court sentenced Williams to two concurrent life sentences, with no possibility of parole for 25 years. The journal entry of sentencing also indicated that Williams was subject to lifetime postrelease supervision for each of these crimes.

DISCUSSION

Williams brings a number of arguments on appeal. In challenging his convictions, he claims two trial procedures—the State's use of a peremptory challenge during jury selection and the wording of the verdict form—individually or in combination violated his right to a fair trial. He also claims the district court erred in imposing lifetime supervision and electronic monitoring in the sentencing journal entry. And he asserts the court erred in summarily denying his pro se motion for postconviction DNA testing. We include additional facts as they become relevant to our discussion.

1. *We affirm Williams' convictions, as he received a fair trial.*

Williams challenges his convictions in two respects. First, he argues the district court erred in allowing the State to exercise a peremptory strike in the midst of jury selection, instead of waiting until the end of jury selection as parties traditionally do. Second, he asserts the wording on the verdict form, which placed the line for finding the defendant "guilty" above "not guilty," infringed the presumption of his innocence. And he claims that even if these alleged errors are not individually cause for reversing his convictions, the combination of those actions violated his right to a fair trial. We find Williams has not shown any error in the trial leading to his convictions.

5

1.1. *The timing of the State's peremptory challenge, though unusual, was not improper and did not violate Williams' right to a fair trial.*

The State, which had the burden to prove Williams had committed the crimes charged, asked the first questions of potential jurors during jury selection. During that process, one of the potential jurors seated in the jury box was removed for cause, and another potential juror—Potential Juror S.C.—was called to take his place. The district court then asked Potential Juror S.C. questions about his age, his occupation, and his courtroom experience. In response to one of these questions, Potential Juror S.C. stated he had been convicted of two counts of aggravated indecent liberties with a child approximately 21 years earlier. Although this case struck close to home for him, the prospective juror stated he could impartially decide the case on the evidence presented.

Instead of waiting for Williams to question the jury panel, the State sought to use one of its peremptory challenges—that is, a challenge without showing the prospective juror could not render an unbiased verdict—immediately to remove Potential Juror S.C. from the jury pool. Williams objected, with his attorney pointing out that "[n]obody has had a chance to talk to [S.C.], so I would like that opportunity." The court overruled this objection and granted the State's request. Williams immediately used his first peremptory challenge to remove another potential juror, Potential Juror C.R., from the jury.

Jury selection continued, with the State finishing its questions and Williams conducting his inquiry. Once both parties approved the jury pool (that is, passed the jury for cause), the court held a conference outside the presence of the jury so the parties could exercise their remaining peremptory challenges. The jury was then seated.

On appeal, Williams renews his argument regarding Potential Juror S.C., claiming the district court erred by allowing the State to exercise a peremptory challenge before he had any opportunity to question the jury panel. Williams argues the State's "premature"

peremptory challenge denied his statutory right to question the jury panel and violated his right to an impartial jury under the Fifth and Sixth Amendments to the United States Constitution.

The purpose of a peremptory challenge is to remove "prospective jurors" who, though "not subject to challenge for cause, . . . are believed to be 'inclined against' a party's interests." *State v. Hill*, 290 Kan. 339, 359, 228 P.3d 1027 (2010). Courts generally give parties wide latitude in exercising peremptory challenges as long as their reasons for doing so are nondiscriminatory. See generally *State v. Angelo*, 287 Kan. 262, 271, 197 P.3d 337 (2008) (distinguishing permissible peremptory challenges from racially discriminatory challenges). We review a district court's decision allowing a party to use a peremptory challenge for an abuse of discretion. *State v. Hudgins*, 301 Kan. 629, Syl. ¶ 3, 346 P.3d 1062 (2015) (applied in context of limiting defendant's voir dire of potential jurors).

Williams argues the procedure here ran afoul of K.S.A. 22-3411a, which he reads to prohibit the State or defendant from using a peremptory challenge until after both parties have passed a jury panel for cause. K.S.A. 22-3411a provides:

> "In all felony trials, upon the request of either the prosecution or the defendant, the court shall cause enough jurors to be called, examined, and passed for cause *before any peremptory challenges are required*, so that there will remain sufficient jurors, after the number of peremptory challenges allowed by law for the case on trial shall have been exhausted, to enable the court to cause 12 jurors to be sworn to try the case." (Emphasis added.)

Reviewing this language, we believe Williams reads this statute too narrowly. K.S.A. 22-3411a does not limit when a party may use a peremptory challenge. Instead, the statute indicates a district court may not *require* a party to use any peremptory challenges until a jury is passed for cause. The reason for this limitation is clear; a court

cannot demand a party use a peremptory challenge until the party knows who, if no challenges are exercised, will be on the jury. But nothing in the statute prohibits a party from using a peremptory challenge earlier if the party chooses to do so.

Williams cites two cases to support his interpretation of the statute: *State v. Mitchell*, 234 Kan. 185, 672 P.2d 1 (1983), and *State v. Crabb*, 51 Kan. App. 2d 159, 343 P.3d 539 (2015). But those cases are factually distinguishable as they involved a "hot-box method" for selecting juries. *Mitchell*, 234 Kan. at 192; *Crabb*, 51 Kan. App. 2d at 161, 164. Under that method, a district court calls and passes 12 jurors for cause; the parties either use a peremptory challenge—and a new juror is seated—or pass; this continues until both parties pass or run out of peremptory challenges. *Crabb*, 51 Kan. App. 2d at 161.

The *Mitchell* and *Crabb* courts found the jury selection method in K.S.A. 22-3411a preferable to the hot-box method. Unlike the statute, which allows the parties to review the entire seated jury before having to use any peremptory challenges, the hot-box method forces the parties to use their peremptory challenges piecemeal. *Mitchell*, 234 Kan. at 195-96; *Crabb*, 51 Kan. App. 2d at 164-65. In such a method, the struck potential juror might have been preferable to the replacement. 51 Kan. App. 2d at 164. And after the last peremptory challenge, the newly seated potential juror could only be removed for cause. 51 Kan. App. 2d at 165.

Here, the parties each used one peremptory challenge before the State passed the jury for cause; they used their remaining peremptory challenges after Williams approved the jury. Both the State and Williams used their first challenges voluntarily; the court did not require either to do so. This process did not violate the statute's plain language. Nor did it circumvent the rationale underlying both *Mitchell* and *Crabb*.

Finally, we question the basis for Williams' underlying argument that he had a right to ask questions of every potential juror. Jurors are not witnesses. Answers to questions during voir dire are not evidence. Williams provides no support for his claim that he should be allowed the opportunity to question a potential juror who will ultimately be excluded, in the hope he can convince the State to use a peremptory challenge elsewhere or obtain a positive response to a question during jury selection.

While the timing of the State's peremptory challenge was unusual, it was consistent with K.S.A. 22-3411a. The district court did not abuse its discretion in allowing the State to use its peremptory challenge before the jury had been passed by both parties for cause.

1.2. *The wording of the verdict form did not violate Williams' presumption of innocence.*

Williams' verdict form placed the line where the jury could find him "guilty" above the line where the jury could find him "not guilty." He argues that this form, which mirrored PIK Crim. 4th 68.110 (2018 Supp.), inverted the presumption of innocence under the Sixth and Fourteenth Amendments to the United States Constitution. We exercise unlimited review over the legality of a verdict form. See *State v. Johnson*, 304 Kan. 924, 931-32, 376 P.3d 70 (2016).

Appellate courts have traditionally reviewed challenges to a verdict form under the same standard as jury instructions. After all, the verdict form is part of the packet sent to the jury with the jury instructions after those instructions have been provided by the court. *Unruh v. Purina Mills*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 (2009). But a verdict form is not a jury instruction; the two serve different purposes. In general, the verdict form does not instruct the jury on the laws it will apply. Instead, the jury uses that form to record its decision on each count, claim, or question presented once that decision has been reached. Given this difference, we question Williams' underlying contention that

the arrangement of "guilty" and "not guilty" on the verdict form could cause the jury to disregard the court's instructions on the burden of proof or alter any decision it had previously reached in applying the law to the facts of the case.

More importantly here, Williams acknowledges that our Kansas Supreme Court rejected his position in *State v. Wesson*, 247 Kan. 639, 652-53, 802 P.2d 574 (1990), *cert. denied* 501 U.S. 1236 (1991), *disapproved on other grounds by State v. Rodgers*, 282 Kan. 218, 144 P.3d 625 (2006), and *State v. Wilkerson*, 278 Kan. 147, 158-59, 91 P.3d 1181 (2004). But he claims *Wesson* and *Wilkerson* were wrongly decided.

This court is duty-bound to follow Kansas Supreme Court precedent unless the court has indicated it is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). For nearly 30 years, both this court and our Kansas Supreme Court have consistently applied the holding in *Wesson*. See *Wilkerson*, 278 Kan. at 159; *State v. Vargas*, No. 119,741, 2019 WL 5485179, at *5 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* November 20, 2019; *State v. Pack*, No. 110,467, 2015 WL 1513974, at *5 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. 1018 (2015). We have no reason to conclude that our Supreme Court will depart from its holding. The district court did not err in using the PIK jury verdict form.

     1.3.    *Williams has not shown any errors, let alone cumulative errors, deprived him of a fair trial.*

Williams claims that even if his other two allegations fell short of reversible error, the combination of those events deprived him of a fair trial. But Williams has not shown any error in the jury selection process or verdict form. Thus, his claim regarding cumulative error also fails. See *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015).

2. *We remand the case to correct the sentencing journal entry.*

At sentencing, the district court imposed two concurrent life sentences without the possibility of parole for 25 years and ordered Williams to pay certain fees and court costs. The sentencing journal entry, however, also indicates that Williams will be subject to lifetime postrelease supervision and electronic monitoring. Williams argues—and the State agrees—that this was an error and should be corrected.

Under Kansas law, off-grid life sentences (like Williams' sentences here) are followed by parole, not postrelease supervision. *State v. Ballard*, 289 Kan. 1000, 1014, 218 P.3d 432 (2009). A sentencing court cannot order lifetime postrelease supervision when a person has been convicted of an off-grid crime. *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 (2011). Nor may a sentencing court impose conditions of parole. *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012).

Furthermore, a sentence is effective upon pronouncement from the bench, not upon the filing of a journal entry. 294 Kan. at 677. Williams' sentence, which the court announced at his sentencing hearing, did not and could not include any condition of postrelease supervision. The sentencing journal entry is thus incorrect in two respects—in its application of Kansas law and in its recording of Williams' effective sentence. We remand the case to the district court to correct this journal-entry error.

3. *The district court erred in summarily denying Williams' request for post-conviction DNA testing.*

K.S.A. 2019 Supp. 21-2512(a) provides an avenue for individuals convicted of certain crimes, including rape, and held in state custody to "petition the court that entered judgment for forensic DNA testing." This request may be made "at any time after conviction." K.S.A. 2019 Supp. 21-2512(a). The requested testing sample must meet three criteria; it must be

11

"(1) . . . related to the investigation or prosecution that resulted in the conviction;

"(2) . . . in the actual or constructive possession of the state; and

"(3) . . . not previously subjected to DNA testing, or [it] can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results." K.S.A. 2019 Supp. 21-2512(a)(1)-(3).

When it receives a petition under this provision, the district court ultimately must determine whether the requested DNA testing meets the requirements of K.S.A. 2019 Supp. 21-2512(a)(1)-(3) and whether the test will produce "noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced" under K.S.A. 2019 Supp. 21-2512(c). *State v. Lackey*, 295 Kan. 816, 820-21, 286 P.3d 859 (2012). A district court's summary denial of a petition for postconviction DNA testing under K.S.A. 2019 Supp. 21-2512 and a court's interpretation of that statute are questions of law over which we exercise unlimited review. 295 Kan. at 820.

After the trial but before sentencing, Williams filed a pro se petition under K.S.A. 2019 Supp. 21-2512, requesting DNA testing. The State had collected various items and samples from Williams and P.W., including swabs from P.W.'s labia majora and minora, posterior fourchette, vagina, and anus, as well as a fitted sheet and futon cover from Williams' bedroom. Although the State identified semen on P.W.'s vaginal, anal, and posterior fourchette swabs and bodily fluids on the sheet and futon cover, the State only conducted a DNA analysis from P.W.'s posterior fourchette swab (because the greatest number of sperm cells were found there). This analysis could not exclude Williams as the source of the DNA. In his petition, Williams requested DNA testing on "all material/ biological material seized during the investigation and prosecution" of his case.

The district court did not take up this petition until the sentencing hearing. After pronouncing Williams' sentence, the court denied his request for DNA testing, finding the request was not yet ripe and the statute did not apply:

12

> "[B]ased upon my understanding of the statute and the situation in this case, I don't think [the motion] fits the statutory requirements. And I don't think it is ripe for the Court under these circumstances. I don't think this statute applies in this particular circumstance and so I'll deny the motion."

The court's journal entry only states that the statute is not applicable; it does not include any further explanation.

Williams immediately filed his notice of appeal to his conviction, sentence, and denial of his petition for postconviction DNA testing. Less than two weeks later, before the appeal was docketed, Williams filed a pro se motion to reconsider his request for testing, which the court again denied.

On appeal, Williams contests both reasons the district court gave for its dismissal. He argues his claim is ripe because the statute allows a person who has been convicted of one of the listed offenses to petition for DNA testing "at any time after conviction." K.S.A. 2019 Supp. 21-2512(a). And he argues the statute applies to him, as the materials he is requesting to be tested are in the State's possession and related to the State's investigation in this case, and most of that material has not undergone a DNA analysis.

The State argues that a person may not petition for testing under K.S.A. 2019 Supp. 21-2512 until after he or she has been sentenced, not merely after he or she is convicted. In particular, the State notes that K.S.A. 2019 Supp. 21-2512 allows a person to "petition the court that *entered judgment*" (emphasis added), and a criminal judgment under Kansas law consists of a conviction and sentence. *State v. Kleypas*, 305 Kan. 224, 242, 382 P.3d 373 (2016).

We disagree with the State's analysis. While the statute references the court that "entered judgment," K.S.A. 2019 Supp. 21-2512(a) clearly states a person may file a petition "at any time after conviction." In adopting this provision, the legislature understood the distinction between a conviction and sentence; subsection (c) references the potential for "noncumulative, exculpatory evidence relevant to the claim . . . that the petitioner was wrongfully convicted *or sentenced*." (Emphasis added.) K.S.A. 2019 Supp. 21-2512(c). Yet the legislature nevertheless decided to define the timeframe in which a petitioner may file as *any time after conviction*. We think it unlikely the legislature would use such broad and clear language if it intended a different timeframe to apply.

And turning to the specific facts before us, we note the district court did not rule on Williams' petition until after pronouncing his sentence. Thus, any previous objection to the timing of that petition was rendered moot. Accord *State v. Bohannon*, 3 Kan. App. 2d 448, 451, 596 P.2d 190 (1979) (holding "a premature notice of appeal lies dormant until such time as the judgment . . . is entered," at which time it "has the same effect as if it had been filed simultaneously with the entry of judgment or appealable order"). The court erred when it found Williams' petition to be "unripe."

The court's second conclusion—that the statute "does not apply"—presents a different challenge for our review, as the nature of the court's ruling is unclear. Was this merely a restatement of the court's erroneous conclusion that the petition was untimely? Or was it an analysis on the merits that Williams' request did not fall within K.S.A. 2019 Supp. 21-2512(a) and (c)? The record before us does not resolve these questions, as the district court provided no explanation of its decision, either in its original denial of Williams' motion or in its denial of his motion to reconsider.

Ordinarily, appellate courts presume the district court found all facts necessary to support its judgment. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015). But the record here does not support such a presumption, and the lack of any factual findings or

14

explanation of the court's decision precludes meaningful appellate review. See *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). Thus, we remand the case to the district court to allow it to consider Williams' motion within the framework set forth in K.S.A. 2019 Supp. 21-2512, with directions that the court articulate its findings and conclusions under that statute.

Affirmed in part, reversed in part, and remanded with directions.