IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,739

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN EUGENE THURBER,
*Appellant*.

SYLLABUS BY THE COURT

1.

Issues of statutory interpretation and subject matter jurisdiction generally pose questions of law subject to de novo review.

2.

In interpreting a statute, a court must attempt to give effect to the Legislature's intent if that intent can be determined from the plain language of the statute. Where a statute's language is plain and unambiguous, a court need not resort to the canons of statutory construction.

3.

Generally, a district court loses jurisdiction over a case upon the filing of a docketing statement in the appellate courts. There are few exceptions to this rule.

4.

A district court's jurisdiction may be expanded or limited by statute.

5.

The plain language of K.S.A. 2020 Supp. 21-2512 does not require that an individual convicted of a crime covered by the statute wait until the resolution of a direct appeal before seeking relief under the statute. Likewise, the plain language of K.S.A. 2020 Supp. 21-2512 grants the district court jurisdiction to consider and act on filings made under the statute even after an appeal has been docketed.

Appeal from Cowley District Court; NICHOLAS M. ST. PETER, judge. Opinion filed August 13, 2021. Reversed and remanded with directions.

*Reid T. Nelson,* of Capital and Conflicts Appeals Office, was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: This appeal arises from the district court's decision to deny Justin Eugene Thurber's motion to appoint counsel—and, by implication, his accompanying pro se petition for DNA testing under K.S.A. 2020 Supp. 21-2512—on the basis that his convictions had not yet become "final." Thurber filed his petition and motion after this court issued a decision on his direct appeal, in which a majority affirmed Thurber's convictions for capital murder and aggravated kidnapping and remanded the matter to the district court with instructions to consider—for purposes of evaluating the penalty phase of trial—whether Thurber had an intellectual disability that would preclude execution under "current constitutional parameters." *State v. Thurber*, 308 Kan. 140, 235, 420 P.3d 389 (2018). However, this court expressly "retain[ed] jurisdiction over the remainder of Thurber's penalty-phase appeal pending notification from the district court and the parties regarding the outcome on remand." 308 Kan. at 235. This appeal is unrelated to the ongoing proceedings in Thurber's direct appeal.

2

We conclude the plain language of K.S.A. 2020 Supp. 21-2512 does not require that Thurber's conviction reach a state of finality on direct appeal before he may initiate proceedings under the statute. We further conclude that K.S.A. 2020 Supp. 21-2512 constitutes a special legislative exception to the general rule that a district court loses jurisdiction once a matter has been docketed for appeal. We thus reverse the district court's decision and remand the matter for further proceedings under K.S.A. 2020 Supp. 21-2512.

FACTS AND PROCEDURAL BACKGROUND

*Underlying Facts*

Because this appeal poses a limited and almost entirely procedural question unrelated to Thurber's direct appeal, we give only an overview of the underlying facts of his case; a more complete recitation is set forth more in our previous decision on Thurber's direct appeal. See 308 Kan. at 144-49. Briefly stated, Thurber was convicted of capital murder and aggravated kidnapping in the killing of J.S. Following the penalty phase of Thurber's trial, the jury returned a verdict for death. Shortly before sentencing, Thurber filed a motion under K.S.A. 21-4623, arguing that he was intellectually disabled. The district court denied the motion on its merits and sentenced Thurber to death, plus 176 months' imprisonment for the aggravated kidnapping, which it ran consecutive to the death sentence.

On appeal, a majority of this court affirmed Thurber's convictions. 308 Kan. at 214. With respect to the penalty phase of the trial, however, the majority determined that the district court had "necessarily . . . appl[ied] an invalid statutory definition for 'intellectual disability' when determining if Thurber can be executed." 308 Kan. at 235. The majority thus reversed the district court's conclusion that there was insufficient

reason to believe Thurber had an intellectual disability and remanded for the district court to reconsider based on "current constitutional parameters." 308 Kan. at 235. Moreover, the court "retain[ed] jurisdiction over the remainder of Thurber's penalty-phase appeal pending notification from the district court and the parties regarding the outcome on remand." 308 Kan. at 235.

*Proceedings Following Remand*

Following remand, Thurber filed a pro se "Petition for Post Conviction DNA Testing Under K.S.A. 21-2512(a)." He later filed a "Motion for Appointment of Counsel Pursuant to K.S.A. 21-2512(e)."

The district court considered these filings at a hearing on February 25, 2020, along with other matters. At this hearing, the State argued that these filings were not yet ripe based on the district court's limited jurisdiction on remand. Thurber argued that K.S.A. 2019 Supp. 21-2512(e) granted the district court jurisdiction to appoint counsel to pursue post-conviction DNA testing, and that "the conviction . . . occurred in March of 2009, when the jury found Mr. Thurber guilty, [and] imposed the sentence of death"— rendering any subsequent attempt to obtain DNA testing under K.S.A. 2019 Supp. 21-2512(a) inherently "post-conviction."

The district court denied the motion for appointment of counsel, although it did not explicitly address the petition for DNA testing:

> "The Court's going to deny the Motion for Appointment of Counsel on all grounds at this time, noting that when the statute reflects the word 'post-conviction,' that conviction is not final. That presupposes that a conviction is actually final, and this one is not, because no mandate has been issued by the Kansas Supreme Court on that portion of the decision. And I'm doing so under the representation of the State that all DNA

4

evidence is secure, it's maintained, it's not being thrown away, or nothing is being done with it that is going to impair Mr. Thurber's rights with respect to that issue for it to be raised at whatever the appropriate time is. . . . I'd like to get it all done as soon as I possibly can, but I think that's the appropriate legal approach. So the motion is denied at this time."

The district court subsequently memorialized this decision in a journal entry:

"[T]he Court finds that for purposes of K.S.A. 21-2512(a), the defendant's conviction is not final because the Kansas Supreme Court has not issued a mandate. Accordingly, the Court denies the defendant's Motion for Appointment of Counsel for post-conviction DNA litigation. The Court orders the State to maintain safe-keeping of the evidence."

Again, the district court did not expressly address the Petition. Thurber then appealed and was granted leave to docket his appeal out of time.

ANALYSIS

Thurber argues that the district court erred in failing to appoint counsel to represent him in his petition for DNA testing and in "dismissing" the petition itself. The State claims that the district court lacked jurisdiction to act on Thurber's filings.

*Standard of Review*

The district court's interpretation of a statute raises a question of law subject to de novo review on appeal. E.g., *In re F.C.*, 313 Kan. 31, 36, 482 P.3d 1137 (2021). The same is true of a district court's determination of its own jurisdiction. *State v. Sellers*, 301 Kan. 540, 544, 344 P.3d 950 (2015). Our framework for statutory analysis is well known:

"The principal rule governing interpretation of statutes is that the legislature's intent governs if this court can ascertain that intent. The court presumes that the legislature expressed its intent through the language of the statutory scheme. When the statutory language is plain and unambiguous, the courts therefore do not need to resort to statutory construction. [Citations omitted.]" *State v. Bee*, 288 Kan. 733, 737, 207 P.3d 244 (2009).

*Discussion*

We begin with the language of K.S.A. 2020 Supp. 21-2512, which provides, in relevant part:

"(a) Notwithstanding any other provision of law, a person in state custody, *at any time after conviction* for murder in the first degree as defined by K.S.A. 21-3401, prior to its repeal, or K.S.A. 2020 Supp. 21-5402, and amendments thereto, or for rape as defined by K.S.A. 21-3502, prior to its repeal, or K.S.A. 2020 Supp. 21-5503, and amendments thereto, may petition *the court that entered the judgment* for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

. . . .

"(e) The court may *at any time* appoint counsel for an indigent applicant under this section." (Emphases added.)

6

We have previously recognized that "a conviction is not final until final judgment on both the conviction and the sentence has been entered on direct appeal." *State v. Kleypas*, 305 Kan. 224, 263, 382 P.3d 373 (2016). But K.S.A. 2020 Supp. 21-2512(a) does not use the word "final" to modify the words "conviction" or "judgment," and does not mention "sentence" in the context of "any time after conviction." Instead, the statute refers to either a wrongful conviction *or* sentence, suggesting that the absence of the words "sentence" or "final" from subsection (a) was not accidental. K.S.A. 2020 Supp. 21-2512(c). Likewise, although K.S.A. 2020 Supp. 21-2512 lies outside the Kansas Criminal Code, the term "conviction" is defined within the Code to include "a judgment of guilt entered upon a plea of guilty," suggesting that the conviction itself constitutes a judgment. K.S.A. 2020 Supp. 21-5111(d). Consequently, the plain language of K.S.A. 2020 Supp. 21-2512(a) provides that a defendant need not wait until sentencing to seek relief under that statute. See *State v. Williams*, 58 Kan. App. 2d 409, 419, 471 P.3d 17 (Based on the inclusion of the words "any time after conviction" in the statute, "[w]e think it unlikely the legislature would use such broad and clear language if it intended a different timeframe to apply."), *rev. denied* 312 Kan. 901 (2020). With this plain language, we find the district court's rejection of Thurber's motion for the appointment of counsel based on the non-finality of Thurber's conviction to be erroneous.

This conclusion does not end our inquiry, however. The State argues that *Williams* is distinguishable because, here, the district court had no jurisdiction to address anything related to Thurber's guilt; that jurisdiction was vested with the Supreme Court once Thurber's appeal was docketed, and we expressly retained jurisdiction following our decision on Thurber's direct appeal.

Ordinarily, the State would be correct. "There are few if any exceptions to the general rule that district courts lose jurisdiction over a matter once the appeal has been docketed." *State v. Scott*, No. 102,837, 2010 WL 4156967, at *2 (Kan. App. 2010)

(unpublished opinion). But see *Burch v. Lynch*, No. 108,798, 2013 WL 2972822, at *4 (Kan. App. 2013) (unpublished opinion) (reciting the same principle of law, but then finding such an exception). For instance, the district court ordinarily loses jurisdiction to hear posttrial motions once an appeal is docketed. See *State v. Smith*, 278 Kan. 45, 51, 92 P.3d 1096 (2004). And as this court recently recognized,

"Generally, under Kansas statutes, a district court has jurisdiction over a criminal case until it enters judgment and the time for appeal has expired. Unless a specific statute grants jurisdiction beyond that point in the proceedings, a district court lacks jurisdiction to consider postconviction motions." *State v. Robertson*, 309 Kan. 602, 604, 439 P.3d 898 (2019).

Additionally, in another recent case, this court reasoned:

"Kansas courts have only the judicial power to hear those matters over which they have jurisdiction. That jurisdiction derives from Article 3, sections 1, 3, and 6 of the Kansas Constitution, which generally grant the State's judicial power through jurisdiction as provided by law. The usual mechanism for the law to define that jurisdiction is through statutes.

"Generally, under the applicable statutes, once a district court enters a valid judgment and the time for appeal has expired, a district court lacks jurisdiction to consider a postconviction motion. [Citations omitted.]" *State v. Smith*, 309 Kan. 977, 981-82, 441 P.3d 1041 (2019).

Here, however, the plain language of the statute authorizes the district court's exercise of jurisdiction over a petition filed under K.S.A. 2020 Supp. 21-2512 regardless of our general rules divesting it of jurisdiction once an appeal has been docketed. Twice, K.S.A. 2020 Supp. 21-2512 authorizes action "notwithstanding any other provision of law"—a phrase that, when combined with the absence of any limitation on the timing of a petition ("at any time after conviction") or the timing of the district court's authority to

8

appoint counsel for a petitioner ("at any time"), leads us to conclude that the Legislature intended to carve out K.S.A. 2020 Supp. 21-2512 as a special extension of the district court's jurisdiction.

This reading comports with our prior caselaw. For instance, in *State v. Denney*, 283 Kan. 781, 793-94, 156 P.3d 1275 (2007), the court considered the intersection of the specific, legislatively created procedure under K.S.A. 21-2512 with the overall trial process. Rejecting the notion that this procedure represented "a continuation of the trial against the defendant," the court reasoned that "the legislatively-created procedures evince a laudable, yet limited, effort to provide for postconviction DNA testing under narrow circumstances." 283 Kan. at 793-94. And more recently, the court—relying in part on *Denney*—concluded that an attempt to obtain DNA testing under K.S.A. 21-2512 constitutes "a new matter within [a defendant's] old criminal case." *State v. LaPointe*, 305 Kan. 938, 951, 390 P.3d 7 (2017). As the court observed, a district court's order for DNA testing was merely the first step in the overall process—a process which had to reach a state of finality *independent* from any other finality in the case. 305 Kan. at 951.

We appreciate the district court's hesitation to exercise concurrent jurisdiction for proceedings under K.S.A. 2020 Supp. 21-2512 in light of Thurber's ongoing direct appeal litigation. Our prior caselaw has expressed grave reservations about parallel criminal proceedings, and for good reason. See, e.g., *LaPointe*, 305 Kan. at 949-50 (recognizing the dangers of piecemeal appeals, which are disfavored by policy); *Kleypas*, 305 Kan. at 243 ("First, to sever a Kansas conviction from the sentence for purposes of res judicata finality could result in confusion, piecemeal litigation, potentially incongruent outcomes, and judicial inefficiency."); *State v. Dedman*, 230 Kan. 793, 797, 640 P.2d 1266 (1982) ("[W]e deem it better policy to have jurisdiction of a criminal action repose in only one court at a time to prevent a case from getting lost in the system."). The risk of procedural confusion or uncertainty—or for a district court's ruling under K.S.A. 2020 Supp. 21-2512(f) to render moot an entire ongoing direct appeal—is not insignificant. But the

Legislature has decided to expand the district court's jurisdiction to proceedings under K.S.A. 2020 Supp. 21-2512, irrespective of ongoing appellate proceedings.

We further recognize the policy goals behind such an expansion in the case of DNA evidence, which, by its very nature, is impermanent. A discussion of the likelihood of such degradation—or of the methods used by law enforcement to prevent such degradation—is far beyond the purview of this opinion. Suffice it to say that we, like the Legislature, recognize the risk that an innocent individual convicted of a crime covered by the statute could lose the ability to establish innocence via postconviction procedures due solely to the caprice of fate and time.

Consequently, we conclude that K.S.A. 2020 Supp. 21-2512 grants continuing jurisdiction to "the court that entered the judgment" to consider a petition for DNA testing "at any time" following conviction and to appoint counsel "at any time," regardless of other ongoing appellate proceedings. We also conclude that K.S.A. 2020 Supp. 21-2512 does not require a conviction to reach a stage of appellate finality as a prerequisite to a petition for DNA testing. We thus reverse the district court's denial of Thurber's motion for appointment of counsel—and its refusal to address Thurber's petition—and remand the matter to the district court to consider Thurber's filings under K.S.A. 2020 Supp. 21-2512 without regard to the finality of Thurber's direct appeal.

CONCLUSION

The district court's decision to deny Thurber's motion for the appointment of counsel and petition for DNA testing is reversed. The matter is remanded to the district court with instructions to consider Thurber's filings independently of the ongoing litigation with respect to Thurber's direct appeal of his conviction and sentence.

Reversed and remanded with directions.